# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

**BARBARA R. WALL**,

            Plaintiff,

    v.

**COMMISSIONER of Social Security**

            Defendant.

Case No. 3:12-CV-00658-SI

**OPINION AND ORDER**

Tim Wilborn, Wilborn Law Office, P.C., P.O. Box 370578, Las Vegas, Nevada 89137.
Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States
Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue,
Suite 600, Portland, OR 97204-2902; Erin F. Highland, Special Assistant United States Attorney,
Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900
M/S 221A, Seattle, WA 98104-7075.
Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff, Barbara R. Wall, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income and Disability Insurance Benefits. For the following reasons, the Commissioner's decision is AFFIRMED.

## BACKGROUND

### A.  The Application

Plaintiff applied for Supplemental Security Income and Disability Insurance Benefits on May 15, 2008. AR 127. Plaintiff alleged disability due to manic depression, posttraumatic stress disorder ("PTSD"), hepatitis C, rheumatoid arthritis, and polysubstance abuse. AR 129-38. On August 29, 2008, the Social Security Administration denied both applications after reviewing Plaintiff's medical history. AR 82-89. Plaintiff filed a request for reconsideration of these denials on September 11, 2008. AR 92-93. After independent review, the Social Security Administration reaffirmed its denial on October 28, 2008. AR 94-99. On November 17, 2008, Plaintiff engaged attorney Sharon Ranasinghe to represent her in further proceedings. AR 100. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). AR 101.

ALJ Stanley R. Hogg held a hearing on September 24, 2010, at which Plaintiff testified regarding her mental and physical condition. AR 33-76. Plaintiff was represented and assisted by Ms. Ranasinghe at the hearing. AR 15. The ALJ filed his decision on November 2, 2010, finding Plaintiff not disabled. AR 12-26. The Appeals Council denied Plaintiff's appeal on October 17, 2011. AR 7-9.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each

step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step

sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a); 416.921(a). Unless expected to result in death,
    this impairment must have lasted or be expected to last for a continuous
    period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the
    claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
    §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe
    impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the
    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
    then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii);
    416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
    the listed impairments, the analysis continues. At that point, the ALJ must
    evaluate medical and other relevant evidence to assess and determine the
    claimant's "residual functional capacity" ("RFC"). This is an assessment
    of work-related activities that the claimant may still perform on a regular
    and continuing basis, despite any limitations imposed by his or her
    impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e);

416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. Id. at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through March 31, 2006. AR 17. Applying the sequential process, the ALJ concluded at step one that Plaintiff had not

engaged in substantial gainful activity since January 1, 2005, when Plaintiff alleges her disability began. *Id.* At step two, the ALJ noted that Plaintiff had a variety of severe impairments, including degenerative disk disease in Plaintiff's back, bilateral degenerative joint disease of the knees, bipolar disorder, obesity, PTSD, and a history of polysubstance abuse. *Id.* The ALJ then explained each finding of severe impairment, as well as each finding of an impairment that was not severe, including Plaintiff's claimed rheumatoid arthritis and hepatitis C. AR 17-20.

At step three, the ALJ determined that this combination of impairments did not meet or equal one of the specific impairments listed in the regulations. AR 18. The ALJ then evaluated the record and determined that Plaintiff had a residual functional capacity ("RFC") sufficient to do light, unskilled work not involving the public. AR 20. In reaching this conclusion, the ALJ evaluated the statements of various clinicians, the Plaintiff herself, and lay witnesses. AR 20-25.

With respect to the Plaintiff's physical health, the ALJ gave significant weight to the report of Dr. Mayenne Karelitz, a state agency reviewing physician, that Plaintiff had physical capabilities consistent with the ability to do light work. AR 20-21. The ALJ noted that this appeared consistent with the opinions of other treating and examining physicians. AR 21. The ALJ also gave significant weight to the report of Dr. Steven Gerson, a consultative examining physician, whose findings were consistent with Plaintiff's physical capacity to do light work. *Id.* The ALJ, however, discounted Dr. Gerson's opinions where they were inconsistent with his examination notes, such as when Dr. Gerson indicated Plaintiff had postural problems despite reporting that she could bend forward and twist or rotate without difficulty. *Id.* The ALJ also gave varying weight to the opinion of state agency reviewing physician Dr. Brett Fisher. AR 22. The ALJ afforded greater weight to that portion of Dr. Fisher's opinion where it was consistent with Dr. Gerson's in describing Plaintiff's physical abilities, but lesser weight where the ALJ

found Dr. Fisher's opinion to be inconsistent with the general record, such as Dr. Fisher's opinion that Plaintiff should not work in hazardous environments. *Id.*

With respect to Plaintiff's mental health, the ALJ gave most of the opinion of Dr. Robert Wildman, an examining psychologist, significant weight. *Id.* The ALJ gave substantial weight to Dr. Wildman's assessment that Plaintiff could "attend a work setting regularly and perform simple directed activities on a consistent basis" because the ALJ found it to be consistent with the record. *Id.* The ALJ did not give much weight, however, to Dr. Wildman's findings that Plaintiff had certain cognitive deficits that the ALJ found inconsistent with the reports of other examining and treating clinicians. *Id.* The ALJ gave little weight to the findings of Dr. Spencer Steele, a treating physician, based on his lack of objective findings, the fact that he did not conduct a mental health examination of Plaintiff, the inconsistency of Dr. Steele's findings with those of other mental health providers, and the conclusory nature of his opinion that Plaintiff was disabled. AR 23.

Regarding the lay witnesses, the ALJ gave little weight to the testimony of either Plaintiff's sister Shelly Hunt or Social Security Administration employee P. Bentley. *Id.* The ALJ found that their conclusions with respect to Plaintiff's cognitive impairments were contrary to medical evidence. AR 23, 25. The ALJ did not find Plaintiff's testimony and written statements to be wholly credible, particularly with respect to the intensity, persistence, and limiting effects of the symptoms alleged. AR 23-24. The ALJ determined that such testimony by Plaintiff was inconsistent with the medical evidence and Plaintiff's reports and complaints to medical professionals. AR 24.

The ALJ noted that although earlier records showed Plaintiff with a Global Assessment of Functioning ("GAF") score as low as 35, psychiatric records from 2008 and 2009 indicate that

Plaintiff had substantially improved and received a score of 60. *Id.* The ALJ found that this evidence showed only a "moderate" cognitive impairment, supporting a finding that Plaintiff was capable of performing unskilled, nonpublic work, consistent with this moderate impairment. *Id.*

At step four, the ALJ found that Plaintiff had past relevant work as a housekeeper from 1997-99. AR 25. The ALJ concluded that Plaintiff could perform this work as it was actually performed and therefore found Plaintiff not disabled. *Id.*

In the alternative, at step five the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff would be able to perform given her physical and mental limitations. *Id.* The ALJ consulted the Medical-Vocational Guidelines corresponding to Plaintiff's age, education, work background, and RFC, and found that the Guidelines suggested a finding of "not disabled." AR 26. Because the ALJ found that Plaintiff could, despite her disabilities, perform substantially all of the required job functions of light, unskilled work not involving the public, the ALJ determined, in the alternative, that Plaintiff was not disabled. *Id.*

**D.  Standards**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotations omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## DISCUSSION

Plaintiff seeks reversal of the determination by the ALJ that Plaintiff is not disabled. In her brief, Plaintiff argues that the ALJ erred by: (1) improperly rejecting the opinions of treating and examining doctors; (2) improperly determining Plaintiff's RFC; (3) improperly discrediting Plaintiff's testimony; (4) improperly rejecting lay witness statements; (5) improperly finding at step four of the sequential analysis that Plaintiff had past relevant work that met the standard of substantial gainful activity; and (6) improperly accounting for all of Plaintiff's exertional and non-exertional limitations in applying Medical-Vocational Rule 202.17 to determine that Plaintiff is able to perform jobs that exist in significant numbers in the national economy.

## A.  Consideration of Medical Opinions

Plaintiff contends that the ALJ improperly discounted the opinions of Dr. Robert Wildman (Plaintiff's examining psychologist) and Dr. Spencer Steele (a treating psychiatrist). An ALJ must determine the weight to give each source of evidence. 20 C.F.R. § 404.1527(d), (f). Opinions from "acceptable medical sources"—such as licensed medical doctors and psychologists—may generally be accorded more weight than those from "other sources" such as social workers, family, and friends. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996); 20 C.F.R. § 404.1513. An ALJ may wholly or partially discount the opinion of any source, but

regulations and Ninth Circuit case law have established specific standards an ALJ must apply in order to do so. *See* 20 C.F.R. § 404.1527 (standards for evaluating medical opinions); *Lester v. Chater*, 81 F.3d 821, 830-33 (9th Cir. 1995) (standards for evaluating acceptable medical sources); *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (standards for evaluating other sources).

The standards for evaluating the opinion of an acceptable medical source differ depending on the extent of contact the source had with the claimant and whether the source is contradicted by other sources in the record. *Lester*, 81 F.3d at 830-33. In general, an ALJ should "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" the claimant. 20 C.F.R. § 404.1527(d)(1). An ALJ may, however, reject the opinion of a doctor who has examined the claimant in favor of the differing opinion of a non-examining doctor if the ALJ "gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). The standard is more exacting if no medical opinion contradicts an examining doctor's opinion. In that instance, the ALJ may only reject the examining doctor's opinion if the ALJ provides "'clear and convincing' reasons" for doing so. *Lester*, 81 F.3d at 830 (quoting *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)).

### 1. Dr. Robert Wildman

Dr. Wildman examined Plaintiff and reported on the results of this examination with the Bureau of Disability Adjudication in Carson City, Nevada on October 10, 2007. AR 591. Dr. Wildman's examination and evaluation were specifically connected with Plaintiff's application for disability benefits. *Id.* The ALJ gave significant weight to Dr. Wildman's finding that Plaintiff could "attend a work setting regularly and perform simple directed activities on a consistent basis[,]" as well as his finding that Plaintiff could appropriately interact with

PAGE 9 – OPINION AND ORDER

supervisors and coworkers. AR 22. The ALJ, however, discounted a portion of Dr. Wildman's report finding that Plaintiff had several significant cognitive deficits. *Id.*

### a.  The discounted portion of Dr. Wildman's report

The ALJ discounted Dr. Wildman's findings that Plaintiff had certain cognitive deficits: (1) difficulty performing serial seven subtractions; (2) a low fund of information; (3) a moderate vocabulary deficit; and (4) moderate proverb interpretation abilities. AR 22. The ALJ found that this portion of Dr. Wildman's opinion was contradicted by other evidence in the record, including reports from other treating and examining physicians that Plaintiff showed no signs of a thought disorder, had an intact memory, and had linear and goal-oriented thought processes. *Id.* Plaintiff argues that the ALJ erred when he discounted a portion of Dr. Wildman's findings.

Plaintiff objects to the ALJ's finding that the deficits identified by Dr. Wildman in 2007 are contradicted by the finding that Plaintiff does not have a thought disorder, arguing that the findings assess different aptitudes. Plaintiff is correct—Dr. Wildman's findings with respect to these particular cognitive deficits are not directly contradicted by the finding that Plaintiff does not have a thought disorder. These impairments, however, are contradicted by other medical findings in the record. Plaintiff underwent a Mini Mental State Examination (MMSE) during her June, 2008 examination by Dr. Ira Pauly, which Plaintiff passed with a perfect score. AR 358. The MMSE includes tests of attention and basic calculation (the capacities tested by serial seven subtraction), as well as memory, orientation, and other cognitive faculties. Robert J. Campbell, CAMPBELL'S PSYCHIATRIC DICTIONARY 616 (9th Ed. 2009); *see also* AR 374 (record of the MMSE Dr. Pauly administered). Dr. Pauly also assigned Plaintiff a higher GAF score than did Dr. Wildman (60, as opposed to 55). AR 359. Plaintiff was again evaluated, by another clinician, as having a GAF score of 60 in September of 2009. AR 550. The GAF is "a scale that rates psychological, social, and occupational adjustment or performance…." *Id.* at 404. The GAF,

therefore, is a broader analytical tool that specifically considers occupational adjustment. Additionally, Dr. Debbie Fletcher examined Plaintiff in June of 2008 and found "[n]o memory or cognitive deficits…." AR 400. Dr. Mark Evans, a consultative clinician, noted no organic mental disorders, including no disorientation, no memory impairment, and no loss of measured intellectual ability. AR 433.

Because the Court finds that Dr. Wildman's assessments of Plaintiff's cognitive deficits were contradicted by other evidence in the record, the "specific, legitimate reasons" standard applies in considering whether the ALJ properly discounted these findings. *Roberts*, 66 F.3d at 184. The Court finds that the ALJ's opinion contained such reasons: namely that the discounted findings of Dr. Wildman were inconsistent with the record as a whole.

The Court further finds that even if Dr. Wildman's assessment had been uncontradicted, and even had rejection of a portion of his assessment been improper, any error was nonetheless harmless, both because Dr. Wildman's disability conclusion is consistent with the ALJ's, and because Plaintiff has not shown that the deficits Dr. Wildman identified ultimately conflict with the ALJ's RFC finding. This Court will not reverse an ALJ's determination due to error not affecting the ultimate decision. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Plaintiff also argues that Dr. Wildman's statements that Plaintiff's mental and orthopedic problems would "periodically interrupt her workday" and his opinion that Plaintiff would have difficulty with competitive employment should have been credited by the ALJ as evidence of disability. Nothing in Dr. Wildman's report, however, suggests that he concluded that these periodic interruptions or the difficulties he identified with respect to Plaintiff's tolerance of the stress of "competitive" employment would represent a functional impairment preventing Plaintiff from working regular hours. Dr. Wildman found that Plaintiff was able to work regularly despite

PAGE 11 – OPINION AND ORDER

these difficulties, and the ALJ's conclusion on this issue is supported by substantial evidence in the record.

### b.  The credited portion of Dr. Wildman's report

Plaintiff argues the ALJ was wrong to rely on Dr. Wildman's statement that Plaintiff could "attend a work setting regularly and perform simple directed activities on a consistent basis." AR 594-95. Plaintiff argues that Dr. Wildman's assessment of Plaintiff's ability to work should *not* be credited because Dr. Wildman is not a vocational expert. Pl.'s Rep. Br. 3. Plaintiff further argues that because Dr. Wildman could not know whether various potential employers would find these periodic interruptions acceptable, his earlier assessment that Plaintiff could regularly attend work should be discounted.

A vocational expert is called when an ALJ wishes to evaluate whether specific jobs actually exist in the economy that a claimant may be able to perform. 20 C.F.R. § 404.1566(e) (2013). Medical opinions, however, may describe a claimant's work-relevant abilities: "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2) (2013). Based on the text of Dr. Wildman's report, his determination related to Plaintiff's abilities and not to the availability of jobs in the national economy. AR 594-95. It was therefore proper for the ALJ to give it credence.

### 2.  Dr. Spencer Steele

Dr. Steele is a psychiatrist at Northern Nevada Adult Mental Health Services (NNAMHS) who met with Plaintiff on July 18, 2008, to discuss Plaintiff's desire to increase her prescribed dosage of Klonopin. AR 403. Dr. Steele did not increase Plaintiff's dosage at that time. *Id.* On August 4, 2008, Dr. Steele filled in a check-box form from the Washoe County, Nevada Department of Social Services entitled "Physician Statement." AR 415. Prompt two on

that document asks the doctor to indicate whether the doctor believes the patient will be able to return to work within one to eleven months and will improve if compliant with medical treatment; Dr. Steele checked the "no" box. *Id.* Prompt three asks whether Plaintiff will be unable to work due to disability for twelve months or longer; Dr. Steele checked the "yes" box. *Id.* The form indicates the date of examination as July 18, 2008. *Id.* The record does not reflect any meetings between Dr. Steele and Plaintiff between July 18, 2008 and August 4, 2008. The ALJ discounted Dr. Steele's finding that Plaintiff was disabled. AR 23.

Plaintiff contends that Dr. Steele was a treating physician and therefore his findings should have been given controlling weight.[1] Generally, the opinion of a treating physician is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2) (2013). The ALJ did not find Dr. Steele's opinion to be well-supported or consistent with other medical evidence. AR 23. In deciding not to give Dr. Steele's opinion controlling weight, the ALJ cited the lack of any objective basis for Dr. Steele's conclusions in his treatment notes. *Id.* The ALJ also considered factors such as the length of the treatment relationship, the frequency of examinations, and the nature of the treatment relationship between the patient and the physician. *Id.* These were appropriate

---

[1] The ALJ concurs that this was a treating relationship under the law. AR 23. This may be in error, as it appears from the record that Dr. Steele saw Plaintiff only once. *See Le v. Astrue*, 529 F.3d 1200, 1201 (9th Cir. 2008) (holding that it was not clearly erroneous for ALJ to conclude that five visits over three years did not establish treating relationship); *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1039 (9th Cir. 2003) (holding that question of whether physician is treating physician is nexus of ongoing treatment relationship and employment to cure). Even if the ALJ's finding that Dr. Steele was a treating physician was in error, it is harmless error because the proper finding would have accorded Dr. Steele even less deference.

considerations. 20 C.F.R. § 404.1527(c)(2)(i)-(ii) (2013); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ noted that Plaintiff visited Dr. Steele only once, that the purpose of this visit was to discuss medications, and that Dr. Steele's treatment notes did not contain any objective findings or record any mental status examination of any kind. AR 23.

The ALJ also inferred that, given the lack of any mental status examination by Dr. Steele, Dr. Steele's conclusions were reached on the basis of patient history. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti* 533 F.3d at 1041 (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). Plaintiff argues that this inference was not permissible, and that if the ALJ wished to know the basis of Dr. Steele's conclusions the ALJ should have contacted Dr. Steele. Plaintiff argues that Dr. Steele worked at a facility with several providers who had seen Plaintiff, and that therefore Dr. Steele may have partly based his conclusions on examination of those records.

The ALJ need not conduct further investigation unless he finds the evidence ambiguous or the record inadequate to allow proper evaluation. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The treatment notes reflect that Dr. Steele heard Plaintiff's mental health complaints: Dr. Steele noted that Plaintiff complained of anxiety but denied depression and claimed she suffered insomnia when prescribed medications other than Klonopin. AR 403. The treatment notes do not reflect any other basis for the conclusions Dr. Steele recorded on the Physician's Statement. This evidence was not facially ambiguous, nor was the record inadequate for the ALJ to conclude that the treatment relationship was cursory and Dr. Steele's conclusions were based on Plaintiff's self-reported history. Therefore no duty for the ALJ to further investigate arose.

Additionally, the ALJ may properly give less weight to checklist reports like the Physician's Statement at issue here. Such checklist reports may be discounted in favor of more detailed, individualized evidence. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). Further, a lack of explanation or basis in treatment notes or records for a particular finding by a treating physician is on its own a specific and legitimate reason to prefer more detailed assessments. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Indeed, an ALJ may decide not to accept the opinion of a treating physician, even in the absence of contradictory medical testimony, if the treating physician's findings are brief, conclusory, and unsupported by clinical findings. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986). Neither the Physician's Statement nor Dr. Steele's treatment notes reveal any clinical findings whatsoever, and the form is notably conclusory, asking not about conditions or findings but merely about disability status generally. AR 415. The ALJ therefore did not err when he discounted Dr. Steele's opinion.

## B.  The RFC Determination

Plaintiff contends that the ALJ's RFC finding that Plaintiff is capable of "light, unskilled work not involving the public" did not capture the ALJ's own determination at step three that Plaintiff had moderate difficulties in maintaining concentration, persistence, and pace. Social Security Rulings describe the nonexertional requirements for "unskilled" work; they include: "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, *available at* 1985 WL 56857, at *4. Plaintiff asserts that a "modest" disability in concentration, persistence, and pace prevents sustained unskilled work. This assertion does not meet Plaintiff's burden to demonstrate that she cannot

PAGE 15 – OPINION AND ORDER

meet these requirements, or that an RFC finding of "unskilled light work not involving the public" does not incorporate Plaintiff's moderate difficulties with respect to concentration, persistence, or pace.

Similar nonexertional impairments have been found to be properly incorporated in an RFC finding limiting a claimant to "simple, routine, and repetitive work." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008). Plaintiff attempts to distinguish *Stubb-Danielson* by arguing that in Plaintiff's case, unlike in *Stubbs-Danielson*, there is medical evidence (from Dr. Wildman) that Plaintiff would be periodically interrupted by her physical and mental health problems and would have trouble dealing with the stress of competitive employment. The Court has already addressed the propriety of the ALJ's consideration and weighing of the medical evidence, and the Court is satisfied that the RFC determination properly incorporates that evidence and the impairments implied thereby. Plaintiff does not advance a meritorious argument distinguishing an RFC of "unskilled" work as used by the ALJ in this case from an RFC of "simple, routine, repetitive" work as used by the ALJ in *Stubbs-Danielson*.

Plaintiff further argues that the ALJ's RFC determination is inconsistent with his finding at step two that Plaintiff had "severe" impairments and that these impairments were not taken into account at later steps. "Severe" impairments are defined for the purposes of steps two and three as impairments that significantly limit a person's ability to do basic physical and mental work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). The rules give examples of basic physical and mental work activities. *Id.* The ALJ found that Plaintiff's impairments could inhibit some of these activities, therefore the ALJ concluded that Plaintiff's impairments were "severe" under this part of the sequential analysis. AR 18. The ALJ then evaluated the entire record, as he is required to do at step three, citing to the transcript where appropriate, and determined which

work activities Plaintiff was able to accomplish. AR 20-25. This was the appropriate procedure. The determination by an ALJ that a claimant has a severe impairment under the Social Security regulations at step two logically cannot be dispositive of disability determinations, because such a finding is necessary for the ALJ even to proceed to step three. The later steps in the analysis require evaluating the record evidence to assess a claimant's ability to work despite any limitations imposed by the claimant's "severe impairments." The ALJ properly conducted this analysis.

**C.  Plaintiff's Credibility**

Plaintiff argues that the ALJ improperly dismissed Plaintiff's testimony and subjective reports regarding her physical and mental impairments. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history,

as well as the claimant's daily activities, work record, and observations of physicians and third

parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d

at 1284. The Commissioner recommends assessing the claimant's daily activities; the location,

duration, frequency, and intensity of the individual's pain or other symptoms; factors that

precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any

medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other

than medication, the individual receives or has received for relief of pain or other symptoms; and

any measures other than treatment the individual uses or has used to relieve pain or other

symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary

techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

statements concerning the symptoms, . . . other testimony by the claimant that appears less than

candid [and] unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a

negative credibility finding "solely because" the claimant's symptom testimony "is not

substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466

F.3d 880, 883 (9th Cir. 2006).

In documents included with her application for benefits, Plaintiff listed the conditions that prevent her from working as manic depression, PTSD, hepatitis C, and rheumatoid arthritis causing back pain. AR 170. Plaintiff complained that she has trouble sitting, standing, walking, lifting, squatting, bending, reaching, kneeling, climbing stairs, seeing, remembering, concentrating, understanding, completing tasks, following instructions, and using her hands. AR 196. Plaintiff supplemented those complaints in her September 24, 2010 hearing testimony, reporting that she suffers from insomnia, depression, and a history of substance abuse. AR 46-48. Plaintiff testified that her rheumatoid arthritis, complicated by scoliosis and an injury sustained when she was stepped on by a horse, causes her extreme back pain. AR 53-54. Plaintiff further testified that her back pain was sometimes so severe as to prevent her from walking. *Id.* While Plaintiff alleges numerous conditions, she specifically identifies her back pain, her sleep patterns, and her mental conditions as her impediments to working. AR 70, 73-74.

The ALJ did not find Plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of her symptoms to be credible. It is undisputed that the record sufficiently establishes that Plaintiff has underlying impairments that could cause the symptoms alleged. Therefore, the ALJ's credibility determination would be erroneous unless founded upon specific, clear, and convincing reasons recorded in the decision. *Lingenfelter*, 504 F.3d at 1036. The ALJ has provided such reasons.

### a. Consistency of Plaintiff's complaints with her medical reports

A claimant's inconsistent reporting of symptoms is evidence an ALJ may consider when making a credibility assessment. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Plaintiff's testimony may be discredited on the basis of "prior inconsistent statements regarding the symptoms…" *Smolen*, 80 F.3d at 1284. The ALJ found Plaintiff's current claims regarding

her back pain and her mental health to be inconsistent with prior reports to medical professionals. AR 24.

With respect to Plaintiff's back pain, the ALJ cited as examples medical records showing that Plaintiff was ambulatory, that she frequently appeared to caregivers to be in no acute distress, and that examination of her back revealed no radiculopathy or spinal stenosis. *Id.* The ALJ further noted that Plaintiff's pain, by her own testimony, waxes and wanes, and noted that Plaintiff's claim that her pain keeps her from lifting is contradicted by medical evidence. *Id.* Plaintiff replies that such variation in pain level does not imply that Plaintiff can sustain work and that "no acute distress" does not imply absence of pain.

The records cited by the ALJ, however, show that Plaintiff has presented to the emergency room "in no apparent distress" and "ambulatory" for treatment of a "low back pain flare-up." AR 277. Similarly, Plaintiff was "ambulating normally" and in only "moderate distress" despite claiming a 9 out of 10 on the pain scale during a flare up. AR 298. No treating physician appears to have found Plaintiff to be non-ambulatory due to back pain. The ALJ found that some of Plaintiff's reports to her doctors contradict her testimony, citing Plaintiff's report to a physician that sometimes she has no pain and can do whatever she wants. AR 277. Plaintiff argues that this is not inconsistent with her reports of waxing and waning pain, but it is inconsistent with Plaintiff's testimony before the ALJ that on her best day her back pain is at a six or seven out of ten, as well as her testimony that she cannot walk, stand, or sit for significant periods without worsening her constant back pain. AR 54, 56-57. The claim that sometimes one is in no pain and capable of doing anything one wants is facially inconsistent with the claim that one is always in at least serious pain and never able to walk much more than a block without a long rest.

The ALJ also did not find Plaintiff's claims that she suffers intense, work-disabling insomnia to be credible. AR 24. Plaintiff's reports to medical professionals are inconsistent with her testimony on this issue. Plaintiff has complained of "poor sleep" in connection with other conditions. AR 348. In refusing prescriptions other than Klonopin, Plaintiff has indicated that certain medications (which she does not currently take) have caused her insomnia in the past. AR 324, 560. Complaints of conditional insomnia caused by medications Plaintiff does not currently take are not evidence of ongoing severe insomnia. Further, although Plaintiff has complained that some nights she cannot sleep at all, she has also reported that she was generally able to sleep six hours a night. AR 560. These comparatively mild complaints are inconsistent with Plaintiff's testimony before the ALJ that she can sleep no more than two hours at a time. AR 66.

In addition, the ALJ did not find Plaintiff's subjective complaints regarding her mental health to be credible to the extent she alleged. AR 24. The ALJ found that Plaintiff has been inconsistent in her complaints with respect to these ailments as well. Plaintiff reported decreased depression in November 2008 and reported good health and no issues or complaints in December 2008. AR 557-58. This is inconsistent with Plaintiff's July 2008 function report (filed in support of her June 2008 application for benefits) and her September 2010 testimony. AR 38-75, 191-98. Additionally, the ALJ found that medical records from treating and examining physicians contradict Plaintiff's complaints with respect to the severity of her cognitive impairments. AR 25. Plaintiff alleges severe disabilities in concentration, attention, orientation, memory, and other faculties. AR 196. Treating and examining clinicians, however, have routinely found her oriented, alert, and attentive, with linear thought processes and intact memory. *See e.g.* AR 348, 400, 558-560, 594-95. Clinicians have frequently noted that she is articulate and intelligent. *See e.g.* AR 348, 594-95. The ALJ found that Plaintiff's complaints are inconsistent with her reports

to clinicians. AR 558. Similarly, more recent clinicians have described Plaintiff as not depressed. *See e.g.* AR 526.

Inconsistencies between Plaintiff's reports to medical professionals and her current claims, in addition to contradictory medical evidence, constitute specific, clear and convincing reasons for the ALJ's negative credibility determination regarding Plaintiff's subjective claims with respect to the intensity, persistence, and limiting effects of her mental and physical symptoms.

### b.  History of seeking treatment for complaints

The ALJ may discredit a Plaintiff's testimony with respect to certain symptoms where Plaintiff has failed to seek treatment for such symptoms and such failure is unexplained. *See Smolen*, 80 F.3d at 1284; *Greger*, 464 F.3d at 972. Compared to her complaints regarding her back and her other mental conditions, the record is sparse regarding Plaintiff's claims of severe insomnia. In addition to the inconsistent reports noted earlier, Plaintiff complained to Dr. Wildman of insomnia interfering with her ability to work. AR 594. Dr. Wildman apparently did not consider this sufficient to justify a diagnosis of severe insomnia, or as work disabling, given his conclusions. AR 594-95. Dr. Wildman's assessment was also in connection with a previous disability adjudication. AR 591.

Despite Plaintiff's claims, the record does not show that Plaintiff has consistently complained of or sought specific treatment for severe insomnia. Her complaints regarding her sleep have generally been either conditional or comparatively mild. AR 324, 348, 560. Even mild complaints are absent from her most recent medical records. AR 557-59. Given her current claims as to the ongoing severity of these problems, it was not unreasonable for the ALJ to conclude that her failure to seek specific treatment is "unexplained or inadequately explained…." *Smolen*, 80 F.3d at 1284. The ALJ specifically cited Plaintiff's failure to complain or seek

treatment for severe insomnia as his reason for finding Plaintiff's assessment not credible. AR 24. This constitutes a specific, clear and convincing reason for discrediting Plaintiff's testimony with respect to her insomnia.

### c. History of following course of treatment

Under SSR 96-7p the ALJ may infer non-credibility where "the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, *available at* 1996 WL 374186, 7. The ALJ found that Plaintiff broke off her relationship with NNAMHS, her primary mental health treatment facility, and ceased her course of treatment with them, for no explained reason. AR 24, 557. Plaintiff does not specifically address, in either her testimony or in her application, why she left Nevada and NNAMHS, which was routinely providing her with medication and treatment, or why she did not continue her treatment elsewhere. Plaintiff testified that she had limited means and no health coverage. AR 74. But this testimony does not explain why she stopped her treatment at NNAMHS, which was provided despite her limited means, or why she did not seek a similar treatment arrangement after she moved to Oregon.

Plaintiff now argues that it is inappropriate to punish a claimant with mental health problems for exercising poor judgment in seeking rehabilitation. Plaintiff cites *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996), for this proposition. This case is distinguishable. Whereas in *Nguyen* the claimant had not reported or sought treatment for his depression, which is an oft-underreported condition, in this case Plaintiff had regularly reported her condition to the clinicians at NNAMHS, had regularly sought treatment, and had previously received the treatment and help she testified before the ALJ that she so badly needs. Nevertheless, after Plaintiff left NNAMHS she did not continue with her treatment. Plaintiff has therefore not been consistent in seeking access to care and medication for her conditions or in following medical

PAGE 23 – OPINION AND ORDER

instructions or treatment for her conditions, and Plaintiff offers no adequate explanation for this

failure. This constitutes an additional clear and convincing reason in support of the ALJ's

negative credibility determination regarding Plaintiff's subjective reports of her mental health

conditions. *Smolen*, 80 F.3d at 1284.

### d.  Conclusion

The ALJ has articulated specific, clear and convincing reasons for discrediting Plaintiff's

testimony as to the physical and mental health symptoms she identifies as work-disabling.

## D.  Weighing of Lay Witness Statements

### 1.  Shelly Hunt's statement

Plaintiff asserts that the ALJ did not properly weigh the testimony of Plaintiff's sister, a

lay witness, as to the severity of Plaintiff's impairments. Shelly Hunt, Plaintiff's sister, filled out

a third-party function report in July 2008 in support of Plaintiff's application for benefits.

AR 177- 190. Ms. Hunt states her opinion that Plaintiff is able to clean and do laundry; to walk,

drive a car, and to use public transportation; to shop in stores; to pay bills, count change, handle

a savings account, and use a checkbook; and to engage in outdoor activities like camping and

swimming. AR 179-81. Ms. Hunt also notes that Plaintiff has trouble paying attention, is

sometimes depressed, and is frequently emotional when she is not medicated. Ms. Hunt attributes

this to bipolar disorder. AR 181-82. Ms. Hunt believes that Plaintiff's condition affects her

memory, her ability to complete tasks, her concentration, her understanding, and her ability to

get along with others. AR 182. Ms. Hunt's report does not describe how long Plaintiff can hold

attention. *Id.*

Lay witness testimony as to a claimant's medical or mental health must be considered by

an ALJ, and may be discounted only after the ALJ gives reasons germane to the witness. *Greger*

*v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). The ALJ, in organizing his decision, cites Ms.

Hunt's statement first, then assesses Plaintiff's credibility, citing medical and other evidence contradicting Plaintiff's subjective testimony. After discussing the record contradictions relating to Plaintiff's testimony, the ALJ concludes, "the claimant's allegations, *and allegations of supporting third parties*, are generally not credible." AR 25 (emphasis added). Thus the reasons given by the ALJ for discounting Plaintiff's testimony and function report were also applied by the ALJ to Ms. Hunt's third party function report as well. The ALJ, therefore, gave reasons for discrediting the statement of a lay witness that are germane to that witness. *Greger*, 464 F.3d at 972. That Plaintiff's and Ms. Hunt's reports were inconsistent with the medical evidence was a reason germane to both, and the structure of the ALJ's opinion shows that his analysis discrediting Plaintiff's testimony applies to Ms. Hunt as well. The Court has reviewed the record, and finds that the ALJ's conclusion that medical evidence in the record contradicts Ms. Hunt's testimony is supported by substantial evidence. AR 348, 400, 558-60, 594-95.

The ALJ also gave two reasons for rejecting Ms. Hunt's statement applicable specifically to her: that her statement was primarily composed of generalizations with regard to Plaintiff's depression and that its conclusions were not supported by medical evidence. AR 25. Plaintiff contends that these reasons are themselves general, that no specific contradictory medical evidence is cited, and that therefore the standard has not been met. The Court agrees with Plaintiff that the content of Ms. Hunt's statement with respect to Plaintiff's depression is in some ways quite specific and that discounting it as a generalization was incorrect. Moreover, although an ALJ may discredit a lay witness's testimony if it *conflicts* with medical evidence, an ALJ may not discredit the testimony of a lay witness merely because the lay witness's statements are *unsupported* by the medical record. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). These were both, therefore, improper reasons for discrediting Ms. Hunt's statement. This error does not

require remand, however, because Ms. Hunt's statement was properly discounted for other reasons.

Additionally, even if the ALJ improperly discounted Ms. Hunt's testimony, any such error was harmless. First, it does not appear that Ms. Hunt reported any specific impairments or disabilities of Plaintiff that the ALJ did not take into account in assessing Plaintiff's ability to work. Ms. Hunt noted that Plaintiff had difficulty paying attention, was difficult to get along with when unmedicated, and was occasionally depressed. AR 181-82. The ALJ found a moderate deficit in attention, persistence, and pace, and that Plaintiff had moderate difficulties in social functioning. AR 19. Indeed, the ALJ's findings are in some ways more restrictive than those reported by Ms. Hunt. She indicates that Plaintiff had no problem shopping, being out alone, and using public transportation. AR 179-81. The ALJ's RFC restricts Plaintiff to work not involving the public. AR 25. The remaining problems that Ms. Hunt identifies are either past-tense generalizations having no evidentiary basis—*e.g.,* "[Plaintiff] has had problems managing money," AR 181—or facts Ms. Hunt would only know from Plaintiff telling her—*e.g.,* "[Plaintiff] has problem [sic] holding jobs." AR 183. Because the specific, work-related deficits Ms. Hunt reported relating to Plaintiff were incorporated into the RFC, any error by the ALJ in discounting Ms. Hunt's testimony was inconsequential.

Second, the ALJ's analysis in discounting Plaintiff's testimony and function applies to Ms. Hunt's claims as well. Failure sufficiently to address lay witness testimony is "harmless where the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (internal quotations omitted). Ms. Hunt generally alleged fewer disabilities in her assessment than did Plaintiff; she did not, for instance, note any physical impairments at all. She did not

indicate that Plaintiff experienced insomnia, or suggest Plaintiff had any trouble being out in public. For the testimony of Ms. Hunt that is consistent with Plaintiff's testimony, any error was harmless.

Ms. Hunt does, however, suggest a few deficits that Plaintiff herself does not: specifically difficulty getting along with others when not medicated and difficulty managing money. The Court has already found that these deficits are not inconsistent with the RFC. Because Ms. Hunt did not allege any conditions inconsistent with the RFC determination that Plaintiff did not also allege, and because the ALJ properly discredited Plaintiff's testimony, any error by the ALJ in failing to address Ms. Hunt's testimony was harmless.

### 2. Mr. Bentley's Statement

Mr. Bentley is an employee of the Social Security Administration who saw Plaintiff on June 20, 2008. He produced a report on that encounter. AR 165-68. Mr. Bentley noted, in response to several prompts on the form, that during the meeting Plaintiff was having trouble understanding, speaking coherently, concentrating, talking, and answering. AR 167. When prompted to explain, Mr. Bentley noted that Plaintiff appeared heavily medicated with fluttering eyes and that she cried periodically during their meeting. *Id.* The ALJ found Mr. Bentley's observations "inconsistent with objective findings of treating mental health therapists, as previously discussed." AR 23 (referring to the ALJ's earlier analysis of the reports of medical professionals). Plaintiff contends that uncontrollable crying had been cited by medical experts.

The Court finds there is substantial evidence in the record supporting the ALJ's finding that Mr. Bentley's observations, to the extent they are relevant, conflict with the findings of medical professionals. Dr. Mark Viner found Plaintiff was not depressed; was oriented to person, place, and time; and had an intact memory. AR 526. Dr. Pauly indicated on June 12, 2008 that Plaintiff's speech was coherent and that she was "fairly articulate and has a reasonably good

intelligence." AR 528. Dr. Pauly did note that Plaintiff "crie[d] readily when discussing the traumatic events of her past," but that is not inconsistent with the ALJ's overall assessment. *Id.* Dr. Wildman found Plaintiff only "slightly depressed" and noted her mood would "move into the normal range" when lighter topics were discussed; Dr. Wildman noted that Plaintiff's speech was of higher quality than he would expect given Plaintiff's education, her pronunciation was fine, and her speech organized and coherent. AR 592-93. The Court is satisfied that the ALJ appropriately weighed Mr. Bentley's observations and provided germane reasons for discounting his report.

### E.  Past Relevant Work

Plaintiff challenges the ALJ's determination that Plaintiff's previous work as a housekeeper constituted past relevant work. It is Plaintiff's burden to show that she does not have the RFC to perform any past relevant work. Past relevant work is any work that a claimant has done within 15 years before evaluation of his or her claim for benefits, which was substantial gainful activity, and which lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560 (2013). Work activity is substantial gainful activity if it is both substantial—in that it involves significant mental or physical activities—and gainful—in that it was done for pay or profit, whether or not a profit was realized. *Id.* § 404.1572.

The ALJ found that Plaintiff had engaged in past relevant work as a housekeeper in 1997, 1998, and 1999. AR 25. The ALJ further found that Plaintiff had the ability to continue this work. Plaintiff seems to have misunderstood the ALJ's arguments and citations and argues against the characterization of Plaintiff's housecleaning work in 2007 as past relevant work. In this Plaintiff is correct: Plaintiff seems to have earned no or nearly no income from that occupation during that year or since (Plaintiff's reported earnings in 2007 came from two telemarketing jobs). AR 154. The earnings reports cited by the ALJ, however, indicate that

PAGE 28 – OPINION AND ORDER

Plaintiff earned substantially more in 1997-99, including from work as a housecleaner during those years. AR 25. The Court notes that the years 1997, 1998, and 1999 were all within the relevant fifteen-year period.

Plaintiff claims and Defendant concedes that the ALJ did not establish that Plaintiff's pay during those periods met the regulatory earning floors establishing a presumption of substantial gainful activity. Def.'s Br. 18. The Court agrees. Because the ALJ did not establish the earnings presumption, the burden fell on the ALJ to show by substantial evidence that Plaintiff has nonetheless engaged in substantial gainful activity. *See Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001). To make such a determination, "[t]he regulations list five factors: the nature of the claimant's work, how well the claimant does the work, if the work is done under special conditions, if the claimant is self-employed, and the amount of time the claimant spends at work." *Id.* at 515-16. The question the Court must answer, then, is whether there is substantial evidence that Plaintiff's work as a housekeeper or cleaner in 1997, 1998, and 1999 was substantial gainful activity.

The ALJ cited records of several jobs from 1997-99, although the nature of some of these jobs is ambiguous. Two are obviously fast food jobs; one for Carl's Junior and another for Jack-In-The-Box, both in 1998. AR 151. Plaintiff testified that she worked for Jack-In-The-Box and as a housekeeper during 1997-99. AR 71-73. For the nature of claimant's work, the ALJ cited the Plaintiff's own description of the physical demands of housekeeping. AR 25, 201. This description, however, refers only to Plaintiff's most recent work as a housekeeper from 2007 and later. AR 199. It does not refer to her work with any cleaning service for which Plaintiff worked in 1997-99, when the ALJ asserts that Plaintiff's cleaning work was substantial gainful activity. The ALJ did not ask Plaintiff how long Plaintiff worked for the various cleaning services from

1997-99 or how many hours she worked during her time with them. The ALJ did not cite
evidence in the record showing this information.

The record does not show how well Plaintiff did her work, under what conditions, or the
amount of time Plaintiff spent cleaning houses. The ALJ's finding that this work satisfied the
requirements of substantial gainful activity is not supported by substantial evidence in the record.
The ALJ therefore erred in finding that Plaintiff was able to perform Plaintiff's past relevant
work as a housekeeper because the ALJ failed to establish that such work was performed in a
manner qualifying as substantial gainful activity. This error does not necessarily require remand,
however, because the ALJ found in the alternative at step five that there were jobs in the national
economy that Plaintiff could perform.

**F.  The ALJ's Finding at Step Five**

At step five, the ALJ found that Plaintiff could perform other jobs existing in the
national economy. In making this determination, the ALJ consulted the Medical-Vocational
Guidelines corresponding to the RFC of "unskilled light work not involving the public" and
Plaintiff's age, education, and work experience. AR 25-26. Generally, the Guidelines may be
dispositive of a disability determination only where they "accurately and completely describe the
claimant's abilities and limitations." *Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006)
(quoting *Tackett v. Apfel*, 180 F.3d 1094, 1102). An ALJ, however, may rely on the Medical-
Vocational Guidelines "when the ALJ finds that the claimant's nonexertional limitations do not
significantly affect his exertional capabilities." *Bates v. Sullivan,* 894 F.2d 1059, 1063 (9th
Cir.1990), *overruled on other grounds by Bunnell v. Sullivan,* 947 F.2d 341 (9th Cir.1991) (*en
banc*). Here the ALJ found that Plaintiff's nonexertional impairments would not prevent Plaintiff
from performing a significant number of jobs in the national economy. AR 26. Plaintiff disputes
this determination, arguing that it (1) does not capture the ALJ's earlier recognition that Plaintiff

has work-impacting impairments that moderately affect her pace, persistence, and concentration and (2) does not capture the ALJ's RFC determination that Plaintiff could not do work involving the public.

The Court has found that the ALJ's RFC determination took into account Plaintiff's moderate impairments as to pace, persistence, and concentration. Thus, Plaintiff's first argument is rejected. On the second argument, the ALJ cited the basic cognitive demands of unskilled work as described in Social Security Ruling 85-15. AR 26. These include "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, *available at* 1985 WL 56857, at *4. Plaintiff's inability to work with the public does not render her incapable of performing these demands. Notably, the Ruling specifically states that unskilled jobs do not ordinarily involve much dealing with the public. *Id.* Thus, the ALJ's reliance on the Guidelines was appropriate, as substantial evidence supported the ALJ's conclusion that Plaintiff's nonexertional limitations would not affect her ability to perform unskilled work.

The Court finds that the ALJ's determination that significant numbers of jobs exist in the national economy that Plaintiff can perform is supported by substantial evidence in the record. Thus, the ALJ's finding that Plaintiff was not disabled was supported by substantial evidence.

## CONCLUSION

The Commissioner erred in deciding that Plaintiff was able to engage in prior relevant work because the Commissioner failed to establish any such work meeting the regulatory requirements. This error is harmless, however, because the Commissioner's finding in the alternative that there exist in the national economy a significant number of jobs that Plaintiff is

able to perform is supported by substantial evidence in the record. The Commissioner's decision that Ms. Wall is not disabled is AFFIRMED. This case is DISMISSED.

      **IT IS SO ORDERED**.

      DATED this 1st day of July, 2013.

                                /s/ Michael H. Simon
                                Michael H. Simon
                                United States District Judge